# IN THE SUPREME COURT OF TEXAS

════════════

No. 10-0321

════════════

TEXAS DEPARTMENT OF PUBLIC SAFETY, PETITIONER,

v.

STEPHEN JOSEPH CARUANA, RESPONDENT

════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

════════════════════════════════════════

CHIEF JUSTICE JEFFERSON, joined by JUSTICE LEHRMANN, concurring.

The moment an officer pulls a driver over for suspected drunk driving, the officer and the driver are adversaries. Absent a roadside confession, the driver will plead innocence, and the officer will accumulate evidence to suspend the driver's license or worse. The officer's subsequent report is more than an official public record. At a minimum, it is an accusation that threatens the defendant's ability to get to work or school. The inclination to believe the officer's account is strong—his mission is to protect the public from the scourge of drunk driving. But the law requires skepticism. It insists that the state prove its case before a driver's license may be suspended. In the context of this case, the law requires the officer to swear that the contents of his report are true. I disagree that a court can disregard the officer's refusal to take that oath. Courts, accustomed to mediating adversarial disputes, regularly exclude documents that are created under circumstances

that call their credibility into doubt. Most business records fall outside that category. Records implying criminal conduct do not.

I recognize that license suspension is a civil action, but the underlying accusation bears all the hallmarks of a criminal case in which the individual faces the threat of incarceration. The Texas Legislature has written a statute, and SOAH a rule, that carefully negotiates the roles of the two adversaries before our Court today. Because the driver here had an opportunity to confront his accuser, who took an oath before testifying at the hearing, I concur in the Court's judgment. I cannot join the opinion, however, because the Court's holding would excuse not only the officer's failure to swear to the truth of the report, but would permit suspension of a driver's license even if the officer never formally swears to the facts the report depicts. I would not go that far.

## I. Peace officers' unsworn reports are inadmissible under the Texas Rules of Evidence when offered by the Department in an Administrative License Revocation hearing.

The Court reasons that SOAH rule 159.23's statement that sworn reports are admissible as public records does not require the converse. Instead, the Court concludes that unsworn reports about driver intoxication are always admissible as public records under our evidentiary rules. I disagree. I would hold that peace officers' reports, when offered by the Department in an ALR proceeding, lack the trustworthiness necessary to come within the public records hearsay exception. A peace officer's report is admissible only if it satisfies rule 159.23's requirement that it be sworn or if the officer swears in court to its contents. *See* 1 TEX. ADMIN. CODE § 159.23(c)(7) (2009) ("An officer's sworn report of relevant information shall be admissible as a public record."), *repealed* 34 Tex. Reg. 334, 335 (2009) (now codified at 1 TEX. ADMIN. CODE § 159.211); *see also* TEX. TRANSP.

2

CODE §§ 524.002, 724.003 (granting SOAH rulemaking authority over license suspension hearings).

Texas Rule of Evidence 803(8) permits the admission of public records that suggest the government has no ax to grind:

> **Public Records and Reports**. Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth:
>
> (A)    the activities of the office or agency;
>
> (B)    matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel; or
>
> (C)    in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law;
>
> *unless the sources of information or other circumstances indicate lack of trustworthiness*.

TEX. R. EVID. 803(8) (emphasis added); *see also* FED. R. EVID. 803(8).[1]

Important to any 803(8) analysis is not just whether the document qualifies under provision (A), (B), or (C), but also whether it satisfies the rule's catchall trustworthiness requirement. Rule 803(8) of both the Federal and Texas Rules of Evidence makes clear that a public record is admissible only if there is no reason to doubt that its author's observations are totally reliable.

The rule provides for the admission of a public record when the author has a legal duty to report it. According to the Federal Advisory Committee, the "[j]ustification for the [public records

---

[1] The Texas hearsay exception for public records and reports is similar to the federal rule. *Compare* FED. R. EVID. 803(8), *with* TEX. R. EVID. 803(8). When the federal and Texas rules of evidence are similar, we look to federal case law and the Federal Advisory Committee Notes when interpreting the Texas rules. *See Bradley v. State ex rel. White*, 990 S.W.2d 245, 248–49 (Tex. 1999).

hearsay] exception is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." FED. R. EVID. 803(8) advisory committee's note. This rationale does not extend to the state's use of police reports, which are excluded from the public records exception under both the Federal and Texas Rules of Evidence when offered against a defendant in a criminal case. FED. R. EVID. 803(8)(A)(ii)–(iii);[2] TEX. R. EVID. 803(8)(B)–(C).[3] As noted by the Fifth Circuit,

> [O]stensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant were not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.

*United States v. Quezada*, 754 F.2d 1190, 1193–94 (5th Cir. 1985) (quoting S. REP. NO. 93-1277 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7064). Thus, "the reason for Federal Rule of Evidence 803(8)(B), after which the Texas rule was modeled, was the presumed unreliability of observations that are made by officers at the scene of a crime."[4] *Pondexter v. State*, 942 S.W.2d

---

[2] Federal Rule 803(8) was amended in 2011 for stylistic purposes. The substance of former Rule 803(8)(B) and (C) is now found in 803(8)(A)(ii) and (iii).

[3] This exclusion from the public records hearsay exception only precludes a police report from being admitted as documentary evidence against the defendant in a criminal case—it does not prohibit the police officer from testifying about the events observed in the inadmissible report. Although a law enforcement officer's report is inadmissible under Rule 803(8)(B), an officer may refer to the report to refresh memory, (but only after claiming insufficient recollection), and may then testify from refreshed memory, even though the officer's testimony is identical to the contents of his or her offense report. *See* TEX. R. EVID. 803(5); *Baker v. State*, 177 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

[4] The federal courts of appeals are generally in agreement that the public records exception presumes the unreliability of criminal police reports containing on-the-scene observations of police officers when offered by the government in criminal cases. *See United States v. Dowdell*, 595 F.3d 50, 70–71 (1st Cir. 2010) ("The Rule's enactment history indicates that 'the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.'") (citation omitted); *United States v. Hatfield*, 591 F.3d 945, 952 (7th Cir. 2010) (noting that the concern of the drafters of the exception in Rule 803(8)(B) was "that reports by law enforcers are less reliable than reports by other public officials because of law

4

577, 585 (Tex. Crim. App. 1996). While these concerns are not implicated when officers are "conducting routine business matters," they are applicable when the report is the precursor to prosecution. *Id.* at 585.

The Court of Criminal Appeals has explained that "[b]oth the federal and Texas hearsay rules have always excluded the crime-scene or investigation observations of law enforcement officers because their factual observations, opinions, and narrations are made while the officer is 'engaged in the often competitive enterprise of ferreting out crime.'" *Fischer v. State*, 252 S.W.3d 375, 382 (Tex. Crim. App. 2008) (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). The Court of Criminal Appeals noted that "[t]he reason for this exclusion [in 803(8)] is the inherently adversarial nature of any on-the-scene or *post hoc* investigation of a criminal suspect." *Id.* at 382–83.[5]

enforcers' adversary relation to a defendant against whom the records are sought to be used"); *United States v. Russell*, 156 F.3d 687, 691–92 (6th Cir. 1998) ("[W]e are also mindful that police investigative reports used against a defendant in a criminal trial are generally regarded as unreliable and are excluded as a matter of law as inadmissible hearsay at trial."); *United States v. Brown*, 9 F.3d 907, 911 (11th Cir. 1993) ("In excluding from the public records exception those matters observed by police officers and other law enforcement personnel, Congress was concerned about the adversarial nature of the relationship between law enforcement officials and defendants in criminal proceedings. . . . Congress was aware of the inherent bias that might exist in reports prepared by law enforcement officials in anticipation of trial.") (citations omitted); *United States v. Enterline*, 894 F.2d 287, 290 (8th Cir. 1990) ("It is clear that the exclusion [in Rule 803(8)(B)] concerns matters observed by the police at the scene of the crime. Such observations are potentially unreliable since they are made in an adversary setting, and are often subjective evaluations of whether a crime was committed."); *Quezada*, 754 F.2d at 1193 ("The law enforcement exception in Rule 803(8)(B) is based in part on the presumed unreliability of observations made by law enforcement officials at the scene of a crime, or in the course of investigating a crime . . . ."); *United States v. Hernandez-Rojas*, 617 F.2d 533, 535 (9th Cir. 1980) (stating that "the subjective report made by a law enforcement official in an on-the-scene investigation . . . lack[s] sufficient guarantees of trustworthiness because [it is] made in an adversary setting [and is] likely to be used in litigation").

[5] *See also Cole v. State*, 839 S.W.2d 798, 811–12 (Tex. Crim. App. 1990) (noting that Rule 803(8)'s "broad language, read in light of the legislative history as a whole, leads to the conclusion that Congress' broader concern was with the potentially prejudicial influence of an adversarial setting and with a defendant's confrontation rights"); *McLeod v. State*, 56 S.W.3d 704, 710 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("The exclusionary clause [in Texas Rule of Evidence 803(8)(B)], which prohibits from this hearsay exception matters observed by police officers, only applies where possible impairment of judgment is implicated, such as observations made by officers at the scene of a crime."); *Perry v. State*, 957 S.W.2d 894, 899 (Tex. App.—Texarkana 1997, pet. ref'd) (noting that the limitation on the admissibility of police reports in the criminal context is "based on the presumption that observations by an officer at a scene of a crime are not as reliable as observations by other public officials" because of "the adversarial nature of the

5

Therefore, because of the "presumed unreliability of law enforcement observations in an adversarial, investigative setting," under our evidentiary rules, police reports are excluded from the public records hearsay exception in criminal cases when offered against the defendant. *Id.* at 385.

This same rationale applies to the observations and conclusions of police officers made in DWI investigations. As the Court of Criminal Appeals has explained:

> [O]n-the-scene observations and narrations of a police officer conducting a roadside investigation into a suspected DWI offense are fraught with the thought of a future prosecution: the police officer is gathering evidence to use in deciding whether to arrest and charge someone with a crime. Calculation and criminal litigation shimmer in the air; the officer is gathering evidence, he is not making an off-hand, non-reflective observation about the world as it passes by.

*Id.* at 384.[6]

An ALR hearing shares many characteristics of a criminal prosecution for the same underlying conduct. The Court overlooks the fact that civil cases in which police reports are admissible generally involve two private parties and a claim for monetary damages—cases involving insurance claims or liability for car wrecks, for example.[7] *See United States v. Smith*, 521 F.2d 957,

---

confrontation between the defendant and the police in the criminal context") (citations omitted).

[6] Although *Fischer* addressed whether a law enforcement officer's factual observations of a DWI suspect, contemporaneously dictated on his patrol-car videotape, were admissible under the present sense impression exception to the hearsay rule, the Court of Criminal Appeals looked to the rationale behind the exclusion of police reports from the public records exception to conclude that the officer's observations were inadmissible. *Id.* at 376, 383. The Court held that, although the public records exception does not trump the present sense impression exception, the same reasons for excluding law enforcement reports under the public records exception required them to hold that such observations should not be admissible as present sense impressions. *Id.* Although *Fischer* did not involve the precise question before us, its discussion regarding the exclusion of police reports under the public records exception is equally applicable here.

[7] *See, e.g.*, *McRae v. Echols*, 8 S.W.3d 797, 799–800 (Tex. App.—Waco 2000, pet. denied) (holding that an officer's conclusions and opinions regarding a collision between a car and a forklift in an accident report fell within the public records exception to the hearsay rule); *Sciarrilla v. Osborne*, 946 S.W.2d 919, 923–24 (Tex. App.—Beaumont 1997, pet. denied) (holding that state trooper's written report regarding his accident reconstruction investigation and findings fell within the business records and public records exceptions to the hearsay rule).

966 (D.C. Cir. 1975) ("In many cases where police records are offered, the litigation is civil in nature and between private parties. Thus the record has not been prepared at the behest of either party, the [issue regarding the trustworthiness of documents prepared with an eye towards litigation] does not arise, and the records are routinely admitted."). But in this case, the defendant and the State are rivals. In an ALR proceeding, the police officer is an interested party who prepares a criminal offense report to wield the strong arm of the State against a person accused of unlawful acts.[8]

After the Department suspends a defendant's license, the driver has the right to challenge that decision in an administrative hearing. In that adversarial setting, the Department must prove that the State had reasonable suspicion to stop or probable cause to arrest the defendant for driving while intoxicated. TEX. TRANSP. CODE § 524.035. This mirrors the elements of a criminal DWI prosecution. *See* TEX. PENAL CODE § 49.04(a) ("A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place."). As in a criminal trial, the State seeks to punish.

Accordingly, the sources of information comprising a DWI report and the circumstances under which it is made call its trustworthiness into question, generally making it inadmissible as a public record under Texas Rule of Evidence 803(8)—whether the report is sworn or unsworn. *See* TEX. R. EVID. 803(8) (allowing admission of "records, reports . . . of public offices or agencies . . . unless the sources of information or other circumstances indicate lack of trustworthiness"). Trooper Flores's report would be inadmissible as a public record if offered by the State in Caruana's DWI

---

[8] *Cf. Layton City v. Peronek*, 803 P.2d 1294, 1297 (Utah Ct. App. 1990) (holding that a jail incident report offered by the government in a civil probation revocation proceeding "is on substantially the same footing" as a police report in a criminal case and thus lacks sufficient reliability to be admissible as a business or public record).

7

prosecution. It should be equally inadmissible as a public record to suspend his license. The only vehicle for admission of peace officer DWI reports in ALR proceedings is SOAH rule 159.23, which requires that the report be *sworn*. This is true even in refusal cases, where peace officers are only required to submit a "written report of the refusal." TEX. TRANSP. CODE § 724.032(a)(4).

The Court correctly notes that rule 159.23 applies to both refusal and failure cases. The court of appeals read rule 159.23 to exclude unsworn reports only in failure cases, relying on the Fourth Court of Appeals' decision in *Texas Department of Public Safety v. Pruitt*, 75 S.W.3d 634 (Tex. App.—San Antonio 2002, no pet.). In *Pruitt*, the court of appeals held that a report in a refusal case need not be sworn in order to be admissible because the officer was not required to file a sworn report under the Transportation Code. *Id.* at 638–39. The court of appeals below agreed with *Pruitt*'s reasoning and concluded that its holding logically implied that in failure cases, where "the statutory language specifically requires a 'sworn report,' as opposed to merely a written one, [the report] must be properly sworn in order to be admissible." ___S.W.3d at___. Thus, the court of appeals read rule 159.23 to exclude unsworn reports in failure cases, but not in refusal cases.

As the Court notes, nothing in the rule justifies this distinction. Rule 159.23 does not differentiate between the two types of cases. To the contrary, the rule requires sworn reports in *both* failure and refusal cases. The Court worries that making an unsworn report inadmissible in both a failure and a refusal case would compromise the Department's case in the latter. According to the Court, "without an arrest report in evidence, the proof necessary to sustain suspension of a license in a refusal case can come only from the arresting officer, who would usually find it difficult, if not impossible, to recall a particular arrest." ___S.W.3d at ___. More burdensome? Yes, but we should

8

embrace a burden that guards against wrongfully penalizing the innocent. In any event, in refusal cases, the Department need not prove the defendant was actually intoxicated, it need only show that he refused a breath or blood alcohol concentration test.[9] If the officer cannot recall the particular arrest, he may use the report to refresh his memory at the hearing. *See* TEX. R. EVID. 612. Requiring an officer to testify from refreshed memory would no more "hinder and often preclude license suspension hearings in refusal cases," than it would hinder and preclude convictions in criminal DWI trials.[10] ___S.W.3d ___.

## II. If, however, the officer appears and is subject to cross- examination under oath, it is within the administrative law judge's discretion to admit an unsworn report.

Forensic science reports are inadmissible in the criminal context because they lack the normal components of trustworthiness. The risk that a conviction will rest on an inaccurate entry on a page motivates its exclusion. That risk can be tolerably minimized when the officer takes an affirmative oath that its contents are true. SOAH rule 159.23 adopts that approach by making it clear that sworn reports are admissible in ALR proceedings. But the rule does not end there. It provides other safeguards for both sworn and unsworn reports:

---

[9] In an administrative hearing in which the Department seeks to suspend an individual's license based on a refusal to submit a specimen, it must prove four things: (1) reasonable suspicion or probable cause existed to stop or arrest the person; (2) probable cause existed to believe the person was operating a motor vehicle in a public place while intoxicated; (3) the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and (4) the person refused to submit to the taking of a specimen on request of the officer. *See* TEX. TRANSP. CODE § 724.042; *Tex. Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 879 (Tex. App.—Fort Worth 2009, no pet.) (en banc).

[10] Moreover, in refusal cases, the defendant's signed statement of refusal, *see* TEX. TRANSP. CODE § 724.031, would be admissible against the defendant in an ALR hearing as an admission by party-opponent. *See* TEX. R. EVID. 801(e)(2).

9

> However, the defendant shall have the right to subpoena the officer. . . . If the defendant timely subpoenas an officer and the officer fails to appear without good cause, *information* obtained from that officer shall not be admissible.

1 TEX. ADMIN. CODE § 159.23 (emphasis added). Thus, rule 159.23 also conditions the admissibility of the peace officer's report on the subpoenaed officer's availability for cross-examination. *See Richardson v. City of Pasadena*, 513 S.W.2d 1, 3–4 (Tex. 1974) (noting that the right to cross-examine a witness is vital and applies even in administrative proceedings). SOAH, by rule, gives the civil ALR defendant safeguards available to criminal defendants to maximize the trustworthiness of information used to suspend or revoke a driver's license.

The U.S. Supreme Court's recent hearsay and Confrontation Clause cases provide a useful comparison. The Confrontation Clause guarantees a defendant's right to confront "those who 'bear testimony'" against him. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2531 (2009). Thus, an ex parte out-of-court affidavit is inadmissible in a criminal prosecution for cocaine possession, because the defendant had no opportunity to confront the analyst who prepared the report. *Id.* at 2542.

The Flores report falls within the core class of "testimonial" statements that the U.S. Supreme Court described as "the principal evil at which the Confrontation Clause" is directed. *Crawford*, 541 U.S. at 50.[11] Included within this class are forensic science reports, which are

---

[11] "To rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'" *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2714 n.6 (2011) (plurality opinion) (citing *Davis v. Washington*, 547 U.S. 813, 822 (2006)).

10

"affidavits" and are "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Melendez-Diaz*, 129 S. Ct. at 2532 (citation omitted). Because "[f]orensic evidence is not uniquely immune from the risk of manipulation," forensic science "affidavits do not qualify as traditional official or business records." *Id.* at 2536–38. As the Court explained, "business and public records 'are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Bullcoming*, 131 S. Ct. at 2714 n.6 (citing *Melendez-Diaz*, 129 S. Ct. at 2539–40). Thus, forensic reports, containing testimonial statements, may not be introduced against the accused at trial unless the person who made the report is unavailable and the accused had an opportunity, pre-trial, to cross-examine that witness. *Id.* at 2710.

> The right of confrontation includes not only "a personal examination," but also
>
> (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth';[and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*Maryland v. Craig*, 497 U.S. 836, 845–46 (1990) (citations omitted). These elements of confrontation—physical presence, oath, cross-examination, and observation of the demeanor of the witness by the trier of fact—enhance the accuracy of the fact-finding process by ensuring that evidence admitted against the defendant is reliable and subject to rigorous adversarial testing. *Id.* at 846; *Romero v. State*, 173 S.W.3d 502, 505 (Tex. Crim. App. 2005).

11

Rule 159.23 provides analogous safeguards. It requires that a peace officer's report be sworn to be admissible. Even a sworn report is inadmissible if an officer does not appear in response to a subpoena. This is likely because an officer's failure to testify in support of his report indicates a lack of trustworthiness. Similarly, I would hold that unsworn reports, offered alone, are inadmissible under our evidentiary rules because they lack the same attributes of trustworthiness. On the other hand, if the officer appears, testifies under oath, and is subject to cross-examination, the concerns inherent in admitting unsworn police reports are minimized because the introduction of the report under such circumstances does not "colli[de] with confrontation rights" of an accused.[12] FED. R. EVID. 803(8) advisory committee's note. As noted by the dissent below, hearsay problems may be overcome by administering an oath, requiring the witness's presence at trial, and subjecting the witness to cross-examination. ___ S.W.3d ___, ___ (Jones, C.J., dissenting) (concluding that "any problems with the perception, memory, narration, or sincerity of the facts stated in the unsworn report were overcome by Officer Flores's live testimony, under oath and subject to cross-examination, that the facts stated in the report were true and correct"). In that situation, it is within

---

[12] In fact, Congress excluded police reports in criminal cases from the public records exception precisely to avoid admission of evidence that is not subject to cross-examination. 2 KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 296, at 332 (6th ed. 2006); *see also Enterline*, 894 F.2d at 290 ("The exclusion [of matters observed by law enforcement officers in a criminal case] seeks to avoid admitting an officer's report of his observations in lieu of his personal testimony of what he observed."); *United States v. Sawyer*, 607 F.2d 1190, 1193 (7th Cir. 1979) ("In our view, the legislative history of Rules 803(8)(B) and (C) indicates that Congress intended to bar the use of law enforcement reports as a substitute for the testimony of the officer. Thus, Representative Dennis, in offering the amendment which excluded law enforcement reports from admission at criminal trials, stated: What I am saying here is that in a criminal case, . . . we should not be able to put in the police report to prove your case without calling policemen. I think in a criminal case you ought to have to call the policeman on the beat and give the defendant the chance to cross examine him, rather than just reading the report into evidence. That is the purpose of this amendment.") (citing 120 CONG. REC. H2387–88 (statement of Rep. Dennis)); *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976) ("In adopting this exception, Congress was concerned about prosecutors attempting to prove their cases in chief simply by putting into evidence police officers' reports of their contemporaneous observations of crime.").

the judge's discretion to determine whether the lack of trustworthiness accompanying an unsworn report has been overcome.

The Court asserts that the "verity of a declaration is thus assured by the criminal penalties for perjury, not a raised arm." ___S.W.3d at ___. It cites to recently amended section 132.001 of the Civil Practice and Remedies Code, which provides that "an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by rule." TEX. CIV. PRAC. & REM. CODE § 132.001(a). This version of the statute was not in effect at the time Trooper Flores's report was written, and the statute, by its terms, does not apply to the unsworn declaration in this case. *See* Act of June 17, 2011, 82d Leg., R.S., ch. 847, § 3, 2011 Tex. Gen. Laws 2119, 2120 ("Section 132.001, Civil Practice and Remedies Code, as amended by this Act, applies only to an unsworn declaration executed on or after the effective date of this Act [September 1, 2011]. An unsworn declaration executed before the effective date of this act is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose."). Even if it did, Trooper Flores's report does not comport with the statute's requirement that the unsworn declaration be "subscribed by the person making the declaration as true under penalty of perjury." TEX. CIV. PRAC. & REM. CODE § 132.001(c)(2). Instead, the report merely states that Trooper Flores "certif[ies] the following information is true and correct." By requiring that the person declare under penalty of perjury that the contents of the unsworn declaration are true, section 132.001 serves the same function as requiring a person to take an oath—it impresses upon the author the seriousness of the matter and reinforces that his statement is subject to criminal penalties if untrue.

13

**III.    Conclusion**

The Court holds that a license may be taken away—even when the driver swears he is innocent—if an officer's unsworn report charges the driver with intoxication.  I believe an oath is required.  The oath should be taken, as the rule requires, when the officer signs the report.  Failing that, the officer must take the oath in court so that the defendant's right to cross-examine his accuser is guaranteed.  Because Caruana had the opportunity to confront Trooper Flores after he took an oath in open court, the administrative law judge had discretion to admit the report.  For these reasons, I concur in the judgment.

_____
Wallace B. Jefferson
Chief Justice

**OPINION DELIVERED**: March 30, 2012